E-FILED
Tuesday, 25 September, 2007  09:47:48 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHNNY PIPPINS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 06-cv-4034 |
| JERRY BURT and LISA MADIGAN, | ) |
| Respondents. | ) |

### O R D E R

This matter is now before the Court on Petitioner, Johnny Pippins' ("Pippins") Petition for a Writ of Habeas Corpus. For the reasons set forth below, the Petition [#1] is DENIED.

### BACKGROUND

This Habeas Corpus Petition raises a number of claims related to Pippins' future sentence imposed by the State of Illinois for his involvement in kidnaping, armed robbery, and murder, in the Circuit Court of Rock Island, Illinois. He will begin serving his Illinois sentence upon completion of his lengthy Iowa sentence, imposed for unrelated felonies. As such, the Illinois Attorney General, Lisa Madigan, has filed a response to the Petition in which Pippins' current custodian, the Warden of the Anamosa State Penitentiary in Anamosa, Iowa, has joined.

The story of Pippins' misdeeds began with a quest for drugs and money.[1] In the evening hours of August 1, 1996, Janeen McKenzie ("McKenzie") heard a knock on her door. When she opened the door, she was knocked to the ground, struck, and held

---
[1] The facts set forth here are taken form the unchallenged recitation contained in the Illinois Court of Appeals' orders.

down while a number of people searched her apartment. Not finding the sum of money and drugs they were looking for, they gagged McKenzie, forcibly placed her into a car and took her to the home of Jermaine Campbell ("Campbell"). The captors compelled McKenzie to knock on Campbell's door. When Campbell opened the door, McKenzie tried to signal him and Campbell slammed his door shut. McKenzie fled down the street, heard a gun shot, and contacted police. Campbell was not so fortunate; he was shot in the chest and died from that wound.

Pippins' involvement in these crimes was deduced from various sources and forensic evidence. Police lifted the fingerprints of William Pippins from McKenzie's apartment. William Pippins is Petitioner's brother. A witness described the getaway car, a candy apple red car with Illinois plates. Police also found spent shell casings, a Ruger P89 handgun, two bandannas (one of which contained DNA that did not belong to Campbell), and other items at Campbell's house. Two bullets recovered from Campbell's house and from Campbell were fired from the same .380 High Point gun.

The police interviewed William Pippins who, although initially denying involvement, admitted to his involvement and implicated Olden Antwan Butler ("Butler"). Subsequently, William Euring ("Euring") and Nakia Ivy ("Ivy") were arrested and admitted involvement. Petitioner also was interviewed and denied involvement, but admitted to purchasing the guns. William Pippins, Butler, Euring, and Ivy testified against Petitioner for reduced sentences and other consideration. Pippins' cousin, Tamika Simms and his girlfriend, Schamlain Gathright ("Gathright"), also testified against him.

The testimony at trial revealed that Pippins, his brother, Butler, Euring, and Ivy conspired to rob Campbell. On August 1, 1996, Pippins and Simms went to a gun store and purchased two Ruger handguns and two .380 High Point guns with ammunition. Simms also assisted Pippins in renting a car similar to the one described by witnesses. Pippins instructed Simms to report the guns missing a month after the purchase. Identical coveralls were also bought by four of the conspirators, including Pippins.

Pippins' co-conspirators testified that they left the rental car by Campbell's house and drove another car to McKenzie's apartment. Once there, they assaulted McKenzie and searched for drugs. Butler left the scene by himself with what he believed to be a bag of marijuana. Pippins took McKenzie to the car and drove to Campbell's house with William Pippins, Ivy, and Euring. Once there, they went to the rented car, acquired the weapons, and proceeded to Campbell's house. Pippins stood behind McKenzie when she knocked on Campbell's door. He shot Campbell and then fled the scene in the candy apple red rental car. Gathright, who was initially Pippins' alibi witness, testified that Petitioner did not join her until the morning of August 2, 1996. She further testified that she found guns, bandanas, latex gloves, and other items in her apartment on August 2, 1996. Gathright observed Pippins counting the bandanas and noting that one was missing. She also stated that Pippins told her that he was going to get $50,000 from Campbell and observed him throw guns in a river.

There were discrepancies in the testimony of the various co-conspirators. Euring testified that he didn't go to purchase the coveralls while the others stated he was there. Euring also testified that he didn't go into Campbell's house but rather waited by the car. Ivy denied carrying a gun while the others stated that he did. Butler, Euring, and Ivy

testified that William Pippins was the ringleader – a fact vehemently denied by William Pippins.

In addition, three convicts, Scotty Baltimore, Donald Tomsha, Jermaine Allen, who were housed with William Pippins at various penal institutions, testified that William Pippins made various statements that exonerated Petitioner. One indicated that William Pippins implicated Petitioner in order to save himself. Another stated that William Pippins told him that Petitioner had nothing to do with the murder and that he was with Gathright at the time. The third indicated that William Pippins admitted to setting his brother up and that he only intended to rob Campbell, not kill him.

The jury apparently did not believe these witnesses as Petitioner Johnny Pippins was found guilty of two counts of kidnaping and two counts of felony murder, one predicated on the kidnaping and the other predicated on the armed robbery. On February 11, 1999, he was sentenced to two concurrent terms of 22 years on the felony murder convictions and 4 years on the kidnaping to be served consecutively.

Pippins pursued an appeal to the Illinois Appellate Court, in which he raised essentially eight arguments: (1) his murder conviction had to be reversed because the state failed to prove the predicate offense of armed robbery beyond a reasonable doubt; (2) the prosecutor erred by violating the advocate-witness rule during his cross-examination of defense witness Jermaine Allen ("Allen") and impeaching Allen with information that was not proven; (3) he was denied a fair trial when the prosecutor elicited prejudicial testimony regarding other crimes; (4) he was denied a fair trial by the prosecutor's closing argument; (5) one of his convictions for murder and his conviction for aggravated kidnaping must be reversed based on the one-act, one crime doctrine;

(6) his consecutive sentences must be modified to run concurrently; (7) the statute that grants the court discretion to order his sentences to be served consecutively to his Iowa sentence is unconstitutional; and (8) the trial court erred in failing to award him credit toward his Illinois sentences for the time between his Illinois indictment and sentencing. On July 5, 2001, his conviction was affirmed in part, reversed in part, and vacated in part. All of Pippins convictions except for his conviction for felony murder predicated on aggravated kidnaping were vacated.

Pippins filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, in which he argued that: (1) the Appellate Court erred in failing to reverse his felony murder conviction based on armed robbery; (2) he was deprived of his right to a fair trial based on prosecutorial misconduct; (3) the statute that grants the court discretion to sentence petitioner consecutively to his sentence in Iowa is unconstitutional; (4) he should be awarded credit for time served in the Rock Island County Jail. His PLA was denied on October 3, 2001.

On February 11, 2002, Pippins filed a pro-se petition for post-conviction relief asserting seven grounds of error: (1) his trial counsel was ineffective for failing to object to the grand jury indictment, failing to object to evidence of prior crimes, failing to object to prosecutorial misconduct, failing to suppress his statements, failing to object when the prosecutor failed to perfect the impeachment of Allen, failing to object when a gun was admitting into evidence that was not the alleged murder weapon, and failing to investigate a potential alibi witness; (2) the prosecutor improperly elicited other crimes evidence; (3) the guilty verdict on the felony murder count was inconsistent with the verdict of not guilty on the count of first degree murder; (4) appellate counsel was

ineffective for failing to raise the inconsistency of these verdicts on appeal; (5) the indictment was flawed for allowing charges of first degree and felony murder to go to a jury trial; (6) appellate counsel was ineffective for failing to raise the issue of disparities in sentences among the co-conspirators; (7) a juror committed criminal misconduct. On January 13, 2003, Pippins was assisted by counsel in amending his petition to argue only that: (1) trial counsel was ineffective for failing to object to improper questioning and closing arguments by the state; (2) trial counsel was ineffective for failing to call Carl White as a witness; and (3) the State failed to disclose consideration for Gathright's testimony. Both petitions were denied on October 1, 2003.

Pippins appealed, contending that: (1) the trial court should have conducted an evidentiary hearing on the question of possible jury tampering; (2) he had the right to be present at the hearing to confront witnesses against him and testify in support of his allegations; and (3) counsel's acquiescence to the post-conviction trial court's procedure denied him reasonable assistance of counsel. The dismissal of his post-conviction petitioner was affirmed on November 7, 2005, and Pippins did not file a PLA.

Pippins has now filed the present Petition in which he alleges: (1) the State failed to prove the predicate offense of armed robbery beyond a reasonable doubt; (2) the prosecutor violated the advocate-witness rule during his cross-examination of Allen; (3) trial counsel was ineffective for failing to object to improper impeachment of several defense witnesses; (4) trial counsel was ineffective for failing to object to other crimes evidence; (5) the prosecutor erred in his closing argument; (6) one of his felony murder convictions and his conviction for aggravated kidnaping should have been reversed; (7) the trial court improperly allowed evidence of an uncharged armed robbery; (8) the trial

court abused its discretion by imposing consecutive sentences based upon a finding of severe bodily injury; (9) it was unconstitutional to impose consecutive sentences absent proof beyond a reasonable doubt that a consecutive sentence is required to protect the public from further criminal activity; (10) he was entitled to be present at an evidentiary hearing on his juror misconduct allegations; (11) he was entitled to credit against his Illinois sentence for time served in the Rock Island County Jail; (12) the State failed to disclose consideration given to Gathright for her testimony; and (13) post-conviction counsel provided ineffective assistance.  This Order follows.

## STANDARD OF REVIEW

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings."  Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), *quoting* Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988).  If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition.  Id.  In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail.  Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed.  Id.  In the present case, Respondent does not argue that Petitioner has failed to exhaust his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court. Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992). This occurs in one of two ways. First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system. Resnover, 965 F.2d at 1458-59. The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); Farrell, 939 F.2d at 411. Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent. Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

## DISCUSSION

I.    Pippins' First, Sixth, and Eighth Claims are Moot

Pippin is apparently laboring under some misapprehension regarding the result of his direct appeal to the Illinois Appellate Court. In its July 5, 2001, Order, the Illinois Appellate Court vacated his convictions for felony murder predicated on armed robbery and aggravated kidnaping. Accordingly, his claims that the State failed to prove the

predicate offense of armed robbery beyond a reasonable doubt, that one of his felony murder convictions and his conviction for aggravated kidnaping should have been reversed, and that it was unconstitutional to impose a consecutive sentence absent proof beyond a reasonable doubt that a consecutive sentence is required to protect the public from further criminal activity are moot, as he was granted relief on those claims in the state courts.

II.     Claims Eleven and Thirteen are Non-Cognizable

In his eleventh claim, Pippins argues that "[p]ursuant to Illinois law" he is "entitled to any jail time spent in custody." Accordingly, he seeks credit against his Illinois sentence for time served in the Rock Island County Jail between his indictment and sentencing. However, the Petition makes clear that the claim is being presented solely as a state law claim. As federal relief pursuant to § 2254 is only available where there the petitioner's custody violates the laws, treaties, or Constitution of the United States, a state court's purported error in interpreting or applying state law is non-cognizable. Dellinger v. Bowen, 301 F.3d 758, 764 (7th Cir. 2002); Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004), citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, Pippins' jail time credit claim is non-cognizable.

Pippins' thirteenth claim asserts ineffective assistance of post-conviction counsel. However, as this circuit has clearly held that there is no Sixth Amendment right to counsel in post-conviction proceedings, his claim is non-cognizable in a § 2254 petition and merits no further discussion. Cawley v. DeTella, 71 F.3d 691, 695 (7th Cir. 1995); Morrison v. Duckworth, 898 F.2d 1298, 1301 (7th Cir. 1990); Pitsonbarger v. Gramley, 141 F.3d 728, 737 (7th Cir. 1998), citing Coleman v.

Thompson, 501 U.S. 722, 111 S.Ct. 2546 (1991); Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990 (1987).

III.  Claims Three, Four, Seven, Ten and Twelve are Procedurally Defaulted

Under Illinois law, the failure to raise a claim in each level of the state courts constitutes a procedural default barring federal review. "[N]o independent federal doctrine permits the district court to disregard a prisoner's failure to take an appeal under circumstances in which state law requires an appeal." Jenkins v. Gramley, 8 F.3d 505, 507 (7th Cir. 1993). Pippins claims that trial counsel was ineffective for failing to object to improper impeachment, that trial counsel was ineffective for failing to object to other crimes evidence, that the trial court improperly allowed evidence of an uncharged armed robbery, that he was entitled to be present at an evidentiary hearing on his post-conviction claims, and that the state failed to disclose consideration given to Gathright for her testimony were not presented to the state courts for one complete round of review.

The claim that evidence of an uncharged armed robbery was erroneously allowed was never presented to the state courts in any form. It is well-settled that claims cannot be raised for the first time in a § 2254 petition, and this claim is therefore procedurally defaulted. Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995).

The other four claims were presented either in his post-conviction petition or on appeal from the denial of that petition. However, Pippins never sought a PLA following the affirmance by the Illinois Appellate Court. As state prisoners in Illinois must file petitions for discretionary review by the Illinois Supreme Court in order to afford the state courts a full and fair opportunity to resolve constitutional claims under Illinois law,

his failure to pursue a PLA also results in the procedural default of these claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); White v. Godinez, 192 F.3d 607, 608 (7th Cir. 1999).

Other than the bald and erroneous assertion that none of his claims are procedurally defaulted, Pippins makes no attempt to either establish cause for and prejudice from his failure to present these claims through one complete round of review in the state courts. Nor does he attempt to invoke the narrow fundamental miscarriage of justice exception. Accordingly, there is no basis to excuse his procedural default and further review of his third, fourth, seventh, tenth, and twelfth claims is barred.

IV.  Pippins' Fifth Claim is Barred From Further Review By an Independent and Adequate State Law Ground

Pippins asserted that the prosecutor committed misconduct during his closing argument on direct appeal and in his PLA to the Illinois Supreme Court. However, the Illinois Appellate Court noted that Pippins had not objected to the purportedly inappropriate comments at trial or in a post-trial motion. Failure to timely object at trial results in a waiver of the right to appeal the issue at a subsequent hearing pursuant to Illinois Supreme Court Rule 615. Pippins then asked the court to consider his claim under the plain error doctrine, and after reviewing the evidence of record, the Appellate Court concluded that the plain error doctrine had no application in his case.

A procedural default results when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991). Here, the Illinois Appellate Court found that Pippins had waived his claim of

prosecutorial misconduct in closing argument by failing to present his argument either at trial or in a post-trial motion. The finding of waiver or forfeiture is therefore an independent and adequate state law ground that precludes further review in this Court.

V.  Claim Two Does Not Present a Finding That Was Either Contrary to, or an Unreasonable Application of Established Supreme Court Precedent

Pippins' second claim is that the prosecutor violated the advocate-witness rule during his cross-examination of witness Allen by repeatedly asking Allen about his attempts to contact Pippins while incarcerated in the same facility prior to trial. This claim was fully and fairly presented to the state courts and was entertained on the merits by the Illinois Appellate Court.

On appeal, the Appellate Court noted Pippins' argument that the comments were an attempt to elicit evidence that Allen had been incarcerated for the commission of another crime, thereby allowing the jury to speculate regarding the specifics of the other crime. The court reviewed the record and held that the questioning was merely an attempt to impeach Allen's testimony that he did not know or talk to Pippens prior to the trial by revealing that Allen had in fact attempted to contact him. Although the Appellate Court acknowledged that the attempted impeachment was improper and that any probative value was outweighed by the prejudicial effect, the balance of evidence establishing Pippins' guilt rendered any error harmless.

While comments by a prosecutor eluding to the fact that statements have been made to him personally out of court may constitute reversible error, substantial or overwhelming evidence of the defendant's guilt may render the error harmless. Berger v. United States, 295 U.S. 78, 84-89 (1935). Pippins cites no clearly established federal

law mandating a contrary result and does not make any attempt to demonstrate that the Appellate Court's decision was unreasonable in light of the substantial evidence against him, including the testimony of his co-conspirators, his own admissions, and the testimony of Gathright and other witnesses.  Accordingly, the Court cannot find that the Illinois Appellate Court decision was either contrary to, nor an unreasonable application of, established Supreme Court precedent, and Pippins is not entitled to relief on this claim.

VI.     Pippins' Ninth Claim is Without Merit

Finally, Pippins contends that his constitutional rights were violated when the state courts imposed consecutive sentences absent proof beyond a reasonable doubt that a consecutive sentence is required to protect the public from further criminal activity.  This claim has been properly preserved for review.

In addressing this claim on direct appeal, the Illinois Appellate Court noted that 730 ILCS 5/5-8-4(b) authorizes the imposition of consecutive sentences where "having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant."  The court reviewed the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), and found no application to the facts of this case, as Apprendi was specifically limited to enhancement of the punishment for a single crime rather than the propriety of ordering a defendant to serve a sentence in one state following a sentence for a wholly unrelated crime committed in another state.

Pippins has cited no law mandating a contrary result. Nor has he expressed anything other than his bald disagreement with the conclusion reached by the Illinois Appellate Court, much less demonstrated an unreasonable application of clearly established federal law. The Court agrees that Apprendi does not apply to issues regarding consecutive sentencing. See Jackson v. Frank, 348 F.3d 658, 665 (7th Cir. 2003). There is simply no Supreme Court precedent holding that factors upon which a consecutive sentence may be imposed must be proven to a jury beyond a reasonable doubt.

Even assuming that Apprendi is applicable in this situation, Pippins was sentenced to 22 years' imprisonment for felony murder; the maximum statutory sentence for that crime without any enhancements was 60 years' imprisonment. Pippin's sentence for felony murder was therefore within the statutory maximum for that crime, and there was no Apprendi violation here. Accordingly, this claim is without merit.

## CONCLUSION

For the reasons set forth above, the Petition for Writ of Habeas Corpus [#1] is DENIED. This matter is now TERMINATED.

Entered this 24th day of September, 2007.

                                                 s/ Michael M. Mihm
                                                 Michael M. Mihm
                                                 United States District Judge